**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 19, 2007, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



_____
**Arthur I. Harris**
**United States Bankruptcy Judge**

**Dated: January 19, 2007**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 05-95628 |
| | ) | |
| JULIE ANN YOST, and | ) | Chapter 7 |
| THOMAS YOST, | ) | |
| | ) | Judge Arthur I. Harris |
| Debtors. | ) | |

MEMORANDUM OF OPINION[1]

Before the Court is the debtors' motion for an order upon creditor Charles Yost to show cause why he should not be liable for damages for violation of the automatic stay and/or held in civil contempt for violation of the discharge injunction by pursuing criminal charges against Julie Yost for allegedly passing a bad check in violation of Ohio Rev. Code § 2913.11. For the reasons that follow, the debtors' motion is denied.

_____
[1] This opinion is not intended for official publication.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FINDINGS OF FACT

On December 6, 2006, the Court heard testimony from debtors Thomas and Julie Yost and creditors Charles and Mary Yost. The chronology of events in this matter is essentially undisputed, although the parties' motives are very much in dispute. After evaluating the testimony and exhibits, the Court makes the following findings of fact.[2]

On May 2, 2005, Mary Yost (Mary) made a $3,000 loan to her niece, Julie Yost (Julie). This loan was apparently made without the knowledge of Mary's husband Charles Yost (Charles) or Julie's husband Thomas Yost (Thomas). The

---

[2] The findings of fact contained in this memorandum reflect the Court's weighing of evidence, including consideration of the credibility of the witnesses. "In doing so, the court considered each witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court has considered the testimony of all the witnesses, as well as all exhibits admitted into evidence.

women agreed that Julie would make monthly payments in the amount of $400 at the beginning of each month. On July 12, 2005, Julie made her first payment with check number 516 in the amount of $100.00. On August 31, 2005, Julie made her second payment on the loan with check number 519 in the amount of $500.00. Both checks 516 and 519 cleared Julie's bank account, leaving a balance of $2,400 owed on the loan.

In September 2005, Julie mailed Charles and Mary a series of postdated checks, each for $400. The first check in that series, check number 520, was dated September 30, 2005. Sometime in early October 2005, Charles and Mary attempted to cash check number 520, but the check was dishonored.[3] They then contacted the prosecutor at the Vermilion Municipal Court who told them to redeposit the check. The check was dishonored for a second time, and Charles and Mary were charged a second bank fee for the dishonored check.

After the check was dishonored for the second time, Charles went to Thomas's workplace to discuss repayment of the loan. Until his conversation with Charles, Thomas was unaware that his wife Julie had borrowed money from his aunt and uncle. Later that same evening, Julie and Mary spoke on the phone, and

---

[3] In Ohio, passing a bad check written for under $500 is a misdemeanor. Ohio Rev. Code § 2913.11(F).

3

Julie informed Mary that she and Thomas had filed for bankruptcy.

Thomas and Julie filed their Chapter 7 bankruptcy petition on October 16, 2005. Notice was mailed to Charles and Mary on October 26, 2005. After this date, Charles and Mary had no further contact with Thomas or Julie concerning the loan or checks at issue.

Sometime in late October 2005, after receiving notice of the bankruptcy, Charles and Mary again contacted the local prosecutor. At that time, Mary prepared a handwritten statement regarding the dishonored check in which she mentioned the pending bankruptcy. Although the statement indicated Charles and Mary would appear in bankruptcy court in January, they did not attend Thomas and Julie's meeting of creditors on January 17, 2006, because Mary was in the hospital.

On February 28, 2006, Charles signed an affidavit prepared by the prosecutor alleging the crime of petty theft against Julie based on the dishonored check. Relying upon that affidavit, the prosecutor filed Case #0600088 in the Vermilion Municipal Court, and a warrant was issued for Julie's arrest. The debtors argue that Charles was motivated by a desire to collect on the debt. The Court finds that, in going to the prosecutor and signing the affidavit on February 28, 2006, Charles was primarily motivated by a desire to see his niece, Julie, punished for her alleged criminal violation. In fact, Charles first went to the

4

prosecutor to press charges against Julie even before he knew that she and her husband Thomas had filed for bankruptcy.

On March 22, 2006, Thomas and Julie received an order of discharge. Notice of the discharge was mailed to Charles and Mary on March 24, 2006.

On April 18, 2006, Julie was stopped for speeding. The officer who stopped Julie discovered the outstanding warrant and arrested Julie. Julie was then taken to jail in Sandusky where she was booked and released the same day.

On May 1, 2006, Thomas and Julie filed a motion for an order to show cause upon Charles. The debtors seek damages for Julie's arrest, lost wages suffered as a result of missing work for her arraignment, fees charged for having her car towed, and attorney fees. The debtors are only seeking damages against Charles, and not against Mary or the local prosecutor. The debtors allege that Charles violated both the automatic stay and the discharge injunction.

On August 10, 2006, the prosecutor dismissed the criminal case against Julie without prejudice. The decision whether to refile rests with the prosecutor.

## CONCLUSIONS OF LAW

*Debtor's Claim under Former Subsection 362(h) of the Bankruptcy Code*

The filing of a bankruptcy petition gives rise to an automatic stay of a broad range of collection efforts including "the commencement or continuation . . . of a

5

judicial, administrative, or other action or proceeding against the debtor" and "any act to collect, assess, or recover a claim against the debtor." 11 U.S.C. § 362(a).[4] Former subsection 362(h) provides that "[a]n individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h); *see also Transouth Financial Corp. v. Sharon* (*In re Sharon*), 234 B.R. 676, 687-88 (B.A.P. 6th Cir. 1999) ("A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act.").

Paragraph 362(b)(1) excepts from the stay the "commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). In drafting this exception to the stay, Congress noted that " '[t]he bankruptcy laws are not a haven for criminal offenders.' " *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 560, *quoting* S. Rep. No. 95-989, at 51 (1978). "Section 362(b)(1) ensures that the automatic stay provision is not construed to bar federal or state prosecution of alleged criminal offenses."

---

[4] This bankruptcy case was filed prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (BAPCPA). Therefore, all references to the Bankruptcy Code are to the Bankruptcy Code as it existed prior to the effective date of BAPCPA.

6

05-95628-aih    Doc 50    FILED 01/19/07    ENTERED 01/19/07 08:47:39    Page 6 of 10

*Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. at 560-61 (1990); *cf. Kelly v. Robinson*, 479 U.S. 36, 43-44 (1986) ("[W]e must consider the language of [11 U.S.C.] §§ 101 and 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.").

There appears to be no controlling case law from the Sixth Circuit directly applying the exception in paragraph 362(b)(1). Other courts have divided into at least two interpretations of the extent of this provision. The first interpretation finds that the exception in paragraph 362(b)(1) is an absolute exception regardless of prosecutorial purpose or bad faith. *See Gruntz v. Los Angeles*, 202 F.3d 1074 (9th Cir. 2000); *Simonini v. Bell* (*In re Simonini*), 69 Fed. Appx. 169 (4th Cir. 2003); *Rollins v. Campbell* (*In re Rollins*), 243 B.R. 540 (N.D. Ga. 1997); *In re Caravona*, 347 B.R. 259 (Bankr. N.D. Ohio 2006); *Dennison v. Davis* (*In re Dennison*), 321 B.R. 378 (Bankr. D. Conn. 2005); *Pickett v. Quinn* (*In re Pickett*), 321 B.R. 663 (Bankr. D. Vt. 2005). The second interpretation focuses on the motive behind the criminal prosecution and finds that the exception does not apply when the primary motivation is the collection of a debt. *See Batt v. Am. Rent-All* (*In re Batt*), 322 B.R. 776 (Bankr. N.D. Ohio 2005); *Dovell v. Guernsey Bank (In re Dovell)*, 311 B.R. 492 (Bankr. S.D. Ohio 2004); *Williamson-Blackmon v.*

7

*Kimbrell's of Sanford* (*In re Williamson-Blackmon*), 145 B.R. 18 (Bankr. N.D. Ohio 1992).

In this case, there could not have been a willful violation of the automatic stay during the time that Charles was unaware of the bankruptcy filing, so his contact with Thomas in October 2005, before receiving written or oral notice of the bankruptcy filing, does not state a claim under former subsection 362(h). *See In re Sharon*, 234 B.R. at 687 (violation is "willful" under former section 362(h) when creditor knows of the stay and violates the stay by an intentional act). In light of the prosecutor's dismissal of the criminal charges and in the absence of a claim seeking declaratory or injunctive relief against the local prosecutor, the Court makes no determination as to whether reinstating criminal charges would be a violation of the discharge injunction. Accordingly, the only actions potentially actionable are: (1) Charles's visit with Mary to the Vermilion prosecutor sometime between late October 2005 and the meeting of creditors on January 17, 2006; and (2) Charles's visit with the prosecutor on February 28, 2006, when he signed the affidavit alleging criminal conduct by Julie in connection with the September 30, 2005, dishonored check.

The debtors in this case urge the Court to follow the second interpretation of paragraph 362(b)(1) and find that Charles was primarily motivated by a desire to

8

05-95628-aih    Doc 50    FILED 01/19/07    ENTERED 01/19/07 08:47:39    Page 8 of 10

collect a debt. Charles argues that the Court should find that the exception is absolute, or alternatively find that he was primarily motivated by a desire to see Julie punished. The Court need not decide which interpretation of paragraph 362(b)(1) controls because the Court finds that in visiting the prosecutor and signing the affidavit, Charles was primarily motivated by a desire to see Julie Yost punished. Therefore, under either interpretation, Charles's actions were excepted, and there was no violation of the automatic stay.

*Debtor's Claim under Section 524 of the Bankruptcy Code*

11 U.S.C. § 524 provides in pertinent part:

> (a) A discharge in a case under this title —
> . . . .
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . .

A debtor may bring civil contempt charges against a party violating the discharge injunction of section 524. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000); *Lover v. Rossman & Co.* (*In re Lover*), 337 B.R. 633 (Bankr. N.D. Ohio 2005). "If contempt is established, the injured party may be able to recover damages as a sanction for the contempt." *In re Caravona*, 347 B.R. at 267, *citing Chambers v. Greenpoint Credit* (*In re Chambers*), 324 B.R. 326, 329

9

(Bankr. N.D. Ohio 2005).

Since the last action Charles took — signing the affidavit alleging criminal conduct — occurred on February 28, 2006, prior to the discharge, Charles did not violate the discharge injunction.

CONCLUSION

For the reasons stated above, the debtors' motion for an order upon creditor Charles Yost to show cause why he should not be liable for damages for violation of the automatic stay and/or held in civil contempt for violation of the discharge injunction by pursuing criminal charges against Julie Yost for allegedly passing a bad check in violation of Ohio Rev. Code § 2913.11 is denied.

IT IS SO ORDERED.